Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily E. Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHEL SASSINE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>NETGEAR, INC., a Delaware corporation.<br><br>*Defendant.* | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*;**<br>**(2) Breach of Express Warranty;**<br>**(3) Breach of Contract; and**<br>**(4) Unjust Enrichment.**<br><br>**DEMAND FOR JURY TRIAL** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Michel Sassine ("Plaintiff" or "Sassine") brings this Class Action Complaint and Demand for Jury Trial against Defendant Netgear, Inc. ("Defendant" or "Netgear"), for deleting consumers' personal files from their Netgear storage devices. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys:

### NATURE OF THE ACTION

1.     Defendant Netgear is a computer networking company that sells networking hardware to consumers, businesses, and service providers.

2.     Among the products Netgear sells is its Network Attached Storage ("NAS") devices,

branded under the "ReadyNAS" product line. In general, a NAS is an enclosure containing a number of hard drives that connects to a user's local network and acts as a centralized storage hub. Authorized users on the local network can access the NAS and its files.

3.      The primary purpose of a NAS is to store, backup, and share files across a network, such as photographs, documents, music, and videos. Consumers pay a premium for a NAS over conventional hard drives or traditional external drives (e.g., USB hard drives) because NAS devices offer additional file protections and redundancies, that is, synchronized copies of data for backup purposes.

4.       Indeed, Netgear advertised that its ReadyNAS devices offer "5 levels of protection" that safeguard against file loss. The protections include anti-virus protection and built-in redundant storage in the event of a hard drive failure.

5.      Beyond the built-in protections, Netgear's other advertised feature for the ReadyNAS product line was its "ReadyCLOUD" functionality. With ReadyCLOUD, users could connect to their ReadyNAS devices even when not on their local network. Through this remote connection over the Internet, users could manage their ReadyNAS device and access files on their local ReadyNAS device.

6.      Despite Netgear's express promises to safeguard consumers' files, in March of 2017, Netgear remotely triggered the wholesale destruction of its customers' data (the "Deletion Command").

7.      As a consequence of Netgear's Deletion Command, consumers' family photographs, videos, and business documents (among other files entrusted to the purported protections of the ReadyNAS devices) were deleted without warning. Worst yet, and due to the design of the ReadyNAS devices, the Deletion Command caused irreversible deletion, which was further exacerbated by Netgear's failure to notify users that their personal files were deleted. As a result, users lost out on any chance of recovering deleted files.

## PARTIES

8.      Plaintiff Michel Sassine is a natural person and a citizen of the State of New York.

9.     Defendant Netgear, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business located at 350 East Plumeria Drive, San Jose, California 95134.

## JURISDICTION AND VENUE

10.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

11.     This court has personal jurisdiction over Defendant and venue is proper because Defendant resides in this District, the events giving rise to this lawsuit occurred, in substantial part, in the state of California, and Defendant conducts business in California and through this District.

## COMMON FACTUAL ALLEGATIONS

*Overview of Netgear and ReadyNAS.*

12.     Netgear is a network hardware company that markets and sells its products to consumers, businesses, and service providers.

13.     Netgear sells a line of ReadyNAS Network Attached Storage ("NAS") devices for the consumer, "prosumer" (i.e., consumers looking for "professional" grade equipment), and business market.

14.     A NAS is a storage device containing multiple hard drives that connects to a users' local area network ("LAN"). A NAS allows all authorized individuals on the LAN to access the NAS's files and functions as a secure central file-storage hub for consumers and businesses.

15.     For instance, consumers upload their family photos and videos, pictures captured on their phones and digital cameras, and digital media, in general, to their ReadyNAS devices. According to Netgear, ReadyNAS devices are a "storage solution for media content captured on your smartphone, DSLR, or GoPro action camera."[1]

---

[1]     *ReadyNAS RBU Series | Connected Storage | Home | NETGEAR,*

16.     Additionally, consumers may host their multimedia such as music (e.g., their entire iTunes music library), movies, and television shows on their NAS device in order to stream it to multiple devices throughout their home.

17.     Working professionals or "prosumers," like photographers and videographers, rely on their ReadyNAS devices to make a living by storing their own and their clients' photos and videos.

18.     Likewise, businesses heavily rely on NAS devices. A NAS allows a business to store and share important business files and documents so that employees can access the files from a central location. For instance, a business can store their client information, invoices, billing records, and documents on a NAS. According to Netgear, "running a successful business often depends on successful file sharing—application data, virtual images, client files, email, all the digital files that make your business go. With ReadyNAS you finally have an advanced and easy-to-use solution for centralizing, securing, and sharing those critical assets."[2]

19.     Consumers pay a premium over conventional hard drives and external storage drives (like USB drives, SD cards, and portable hard drives) because NAS devices—like Netgear's ReadyNAS—provide greater file protection and file management capabilities.

20.     Netgear markets the ReadyNAS device as a complete file protection solution that will safeguard consumers' personal files. For example, ReadyNAS webpage promises "Complete, reliable and cost-effective protection of your company files, databases, virtual images." *See* Figure 1.[3]

---

https://www.netgear.com/home/products/connected-storage/readynas.aspx#tab-featurevideos (last visited Feb. 28, 2018).

[2]     *ReadyNAS for Business | Business Desktop Storage | NETGEAR*, https://www.netgear.com/business/products/storage/readynas/readynas-desktop.aspx#tab-solutions (last visited Feb. 28, 2018).

[3]     *ReadyNAS for Business | Business Desktop Storage | NETGEAR,* https://www.netgear.com/business/products/storage/readynas/readynas-desktop.aspx (last visited Feb. 1, 2018).



(**Figure 1.**)

21.     Netgear also devotes significant space on the ReadyNAS packaging promising the data protections it offers with statements like "Your files. Fully protected. Ready to go," and "Industry leading 5 levels of data protection." *See* Figure 2.



(**Figure 2**, showing the ReadyNAS packaging.)

22.     Netgear further explains that its "5 levels of data protection" means a bevy of technical solutions to ensure data integrity: real-time anti-virus protection, bit-rot protection, and RAID functionality. While anti-virus protection safeguards against malicious files and viruses

invading consumers' hard drives, bit-rot protection ensures consumers' files are not corrupted over time due to a hard drive's natural deterioration. Similarly, a RAID (a Redundant Array of Inexpensive Disks) protects data in the event of a hard drive failure by storing the same data across multiple hard drives inside the NAS. *See* Figure 3.



(**Figure 3.**) [4]

23.     A NAS also serves as a back-up for consumers' computers and devices through its "incremental backup copies with unlimited snapshots" feature. *Id.* ReadyNAS can store PC users' computer backups, Mac users' Time Machine backups, and smartphone backups. According to the ReadyNAS packaging, consumers can "sync folders between ReadyNAS and PCs" and ReadyNAS has "Time Machine backup support for all the Macs in your home."

24.     Together with the promised data protections, the ReadyNAS features the ability to access a local ReadyNAS device remotely (i.e., over the internet) with the ReadyCLOUD feature. According to Netgear, "ReadyCLOUD is a free service that allows you to access files on your ReadyNAS…anytime, anywhere, or from any web-enabled device."[5]

25.     In other words, ReadyCLOUD turns a consumer's local ReadyNAS device into a personal cloud storage system that can share files throughout the home, business, or anywhere in the world. Consumers can access their files through the ReadyCLOUD web portal, the ReadyCLOUD

---

[4]     *ReadyNAS for Business | Business Desktop Storage | NETGEAR,* https://www.netgear.com/business/products/storage/readynas/readynas-desktop.aspx (last visited Jan. 22, 2018).

[5]     *ReadyCLOUD,* http://readycloud.netgear.com/client/en/what-is-readycloud.html (last visited Jan. 26, 2018).

mobile application, or the ReadyCLOUD desktop application on a Mac or PC.

26.     Indeed, Netgear sought to compete against popular cloud storage services, like Google Drive and Dropbox, by allowing consumers to host their own files on their ReadyNAS device without paying monthly fees. With ReadyNAS, Netgear offered a product where consumers could maintain control of their own files and not turn them over to a third party (e.g., Dropbox).

27.     The thrust of Netgear's promises was that data stored on the ReadyNAS device would be secure and protected. Consumers and prosumers purchased Netgear's ReadyNAS because they believed they were purchasing "full protection" of their valuable data and files.

***Netgear Issued The Deletion Command, Erasing Consumers' Valuable Data.***

28.     On March 30, 2017, consumers woke up to find that their personal files had been deleted from their local ReadyNAS devices. All personal photos, videos, business documents, and other important documents were deleted without warning.

29.     Panicked consumers turned to Netgear for immediate help. Unfortunately, Netgear remained silent regarding this issue for several days, thus leaving consumers clueless about what steps (if any) they could take to attempt to recover their files.

30.     On April 4, 2017, Netgear issued a statement on its community forum regarding consumers' missing data. In explaining the issue, Netgear admitted that it had issued a Deletion Command that triggered the wholesale destruction of its customers' data from their local ReadyNAS devices. According to Netgear:

> ReadyCLOUD had an issue on March 30th, 2017 between 1:00 AM and 12:00 PM US Pacific time, which caused ReadyNAS devices to leave ReadyCLOUD. This incident stopped the connection from your ReadyNAS to the Cloud and may be preventing you from accessing your ReadyNAS remotely. Also, private home shares for ReadyCLOUD users were removed as part of a ReadyCLOUD user cleanup mechanism (which has since been disabled).[6]

31.     Sometime after Netgear issued the Deletion Command, moderators on Netgear's

---

[6]     *Having ReadyCLOUD problems since 3/30/17? - NETGEAR Communities,* https://community.netgear.com/t5/ReadyCLOUD/Having-ReadyCLOUD-problems-since-3-30-17/td-p/1259697 (last visited Jan. 26, 2018).

community forums provided critical information regarding the steps a user could take in order to increase his or her chances of recovering deleted files. For instance, Netgear advised users not to enable ReadyCLOUD on their ReadyNAS devices and to switch their ReadyNAS into "read only mode" in order to prevent overwriting deleted data.

32.    Netgear's statement, however, was not directly communicated to affected ReadyNAS customers. Instead, Netgear assumed ReadyNAS users would navigate to its community forum themselves, and find this important communication among hundreds of posts.

33.    Finally, on April 20, 2017—three weeks after Netgear issued the Deletion Command—Netgear notified its customers directly via email regarding their missing files and advised them to review their ReadyNAS to determine whether it was affected.

34.    Unfortunately, Netgear's delay exasperated the issue and decreased any chances of recovering deleted files. Because Netgear did not immediately advise ReadyNAS customers what steps to take after it issued the Deletion Command, consumers' personal data was irreversibly and permanently deleted. For example, had ReadyNAS customers put their device into "read only mode" immediately after Netgear issued the Deletion Command, they may have had greater success in recovering some of their deleted files.

35.    When it issued the Deletion Command, Netgear unilaterally deleted ReadyNAS customers' locally-stored files without any notice or permission and sidestepped any purported protections, including its promises that consumers files would be "fully protected" by "industry leading 5 levels of protection."

36.    Netgear breached its agreement with ReadyNAS customers to store and protect their valuable data and files by deleting them instead.

37.    After Netgear issued the Deletion Command, customers publically complained on Netgear forums and shared their experience. One forum thread regarding this issue alone had over 700 posts by consumers and Netgear moderators. *See* Figures 4-7.

**Gecko_Alex** Tutor

**Betreff: User has been Auto deleted - all data lost**

The same issue! Today ReadyCLOUD service automatically turned off (and I can't turn it on back)! All cloud users were deleted and the cloud (home) folders with all data were lost!!! I consider this issue as a huge mistake by NETGEAR. Indeed, seems to fail the purpose of the NAS!

Model: RN2120|ReadyNAS 2120 1U 4-Bay Diskless
Message 64 of 707

**(Figure 4.)**

**Jorgequinteroc** Aspirant

**Re: Home Folder Dissapeared**

I just had filled this folder with information and there is no backup for me. This is not acceptable! What other solutions can you give users? This is a widespread problem now there are hundreds with this problem. You can not just say restore from backup, in my case there is no backup of the new data I just wrote to that folder. Several GB of sensitive info are now lost. What else can we do?

Message 138 of 707

**(Figure 5.)**

**trillian796** Guide

**Re: Ready Cloud back up and running but no restore of home directories**

You are my backup of Inportant data. It is unacceptable that a failure on your end can just wipe data off of so many systems.

Really unimpressed !!!!

Message 143 of 707

**(Figure 6.)**

**Grechkovik**  Aspirant

**Re: Cant access my http://readycloud.netgear.com site**

I feel sick, I was collating all my files onto the NAS Guessing from this, Ive just lost everything I've ever done. Client work, my work, my accounting info, my invoices :'(
Might have to see if there's legal recourse

Message 193 of 707

**(Figure 7.)**

## FACTS SPECIFIC TO PLAINTIFF SASSINE

38.     Plaintiff Sassine purchased a Netgear ReadyNAS RN104 on or around March 2015.

39.     Sassine uploaded approximately 5 terabytes (TB) of files to his ReadyNAS device including, *inter alia*, family photographs, vacation photos and videos, pictures he took from his cellphone throughout the years, drone and GoPro videos, movies, music, and his writing projects from college. A majority of Sassine's files have a priceless sentimental value that he entrusted Netgear's NAS to protect.

CLASS ACTION COMPLAINT                                    9

40.     On or around March 30, 2017, Sassine found that all files from his ReadyNAS had been deleted by Netgear.

41.     Sassine immediately contacted Netgear's customer support to recover his files. Because Netgear did not promptly respond to Sassine with a remedy for his missing files—or any information about Netgear's purported outage—he purchased Netgear's "Oncall" expedited support.

42.     Unfortunately, Netgear provided Sassine with an ineffective recovery tool that recovered approximately only 320 gigabytes (GB) of his 5 TB of storage (or approximately only 6% of his files).

43.     In addition, Netgear's customer support forced Sassine to purchase an additional hard drive in order to attempt any sort of recovery of his files. Netgear did not reimburse Sassine for the additional costs of mitigation he incurred.

44.     Netgear refused to provide Sassine with any further support and closed his case every time he requested further support regarding this matter.

45.     Sassine would not have purchased a ReadyNAS (and entrusted the device with his personal files), nor would have paid as much for the ReadyNAS had he known that Netgear would unilaterally issue the Deletion Command.

## CLASS ALLEGATIONS

46.     **Class Definition:** Plaintiff Michel Sassine brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follow:

> All individuals and entities whose files were deleted from their ReadyNAS device(s) by Netgear.

47.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a

timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

48.     **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Class members can be identified through Defendant's records.

49.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> a.     Whether Defendant Netgear violated Cal. Bus. & Prof. Code §§ 17200 *et seq.*;
>
> b.     Whether Defendant breached its express warranty pursuant to Cal. Comm. Code § 2313;
>
> c.     Whether Defendant breached its contract with Plaintiff and the Class; and
>
> d.     Whether Defendant, in the alternative, was unjustly enriched.

50.     **Typicality:** Plaintiff's claims are typical of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

51.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

52.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief

appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or laws applicable only to Plaintiff. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

53.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200**
**(On Behalf of Plaintiff and the Class)**

54.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

55.     California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

56.     The UCL prohibits any unlawful, unfair, or fraudulent business acts or practices.

57.     As described, Defendant entered into contracts with consumers of its ReadyNAS devices and accepted payments from consumers based on the understanding that the ReadyNAS device would store and protect consumers' data. Defendant then systematically breached its existing

1  contractual obligations with its ReadyNAS customers when it unilaterally deleted their files from

2  their local ReadyNAS devices.

3         58.    This practice of entering sales contracts and systematically breaching them has a

4  negative impact on competition. Plaintiff and the Class would not have entered into these contracts

5  with Defendant, as opposed to other popular cloud storage services like Google Drive and Dropbox,

6  nor would have paid as much for the ReadyNAS device, had they known that the device would not

7  store and protect their data, as promised. This harm outweighs any purported benefit to Defendant.

8         59.    Plaintiff and Class members have suffered harm in the form of loss of the bargained-

9  for benefit and actual monetary damages resulting from Defendant's conduct.

10        60.    As such, Plaintiff, on behalf of a Class of similarly situated individuals, seeks an

11  award of actual damages, costs, and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranties**
**Pursuant to Cal. Comm. Code § 2313**
**(On Behalf of Plaintiff and the Class)**

12

13

14        61.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

15        62.    Pursuant to California Commercial Code § 2313, Defendants' sale of ReadyNAS

16  devices included express warranties created by its affirmations of fact and promises made through

17  its advertising, website, and product packaging.

18        63.    Defendant's express warranties include affirmations of fact and promises that its

19  ReadyNAS devices would store and "fully protect[]" Plaintiff's and Class members' files with "5

20  levels of data protection." Plaintiff and the Class saw and read these affirmations either on their

21  product's packaging or in its advertising campaign (including Netgear's website) prior to

22  purchasing the ReadyNAS devices.

23        64.    These affirmations formed the basis for the bargain, in that Plaintiff and the Class

24  members believed that they were purchasing a product that would protect their files. But for

25  Defendant's affirmations and promises, Plaintiff and the Class would not have purchased the

26  ReadyNAS devices (or would have paid less for them).

27        65.    Defendant breached its express warranty because it unilaterally deleted Plaintiff's

28
CLASS ACTION COMPLAINT                          13

and Class members' files from their ReadyNAS devices and the ReadyCLOUD.

66.     Defendant's breach of express warranties injured Plaintiff and Class members because they did not receive their bargained-for benefit and were damaged by the loss of their files.

67.     By serving this Complaint, Plaintiff and the Class hereby give Defendants notice that they have breached their express warranties and request maximum damages as provided by the California Commercial Code.

**THIRD CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     Plaintiff and the Class members entered into agreements with Defendants whereby Defendants agreed to sell, and Plaintiff and the Class agreed to purchase, ReadyNAS device(s) that would store and protect their files.

70.     Based on this agreement, Plaintiff and the Class members paid—and Defendants accepted—the purchase price of the ReadyNAS devices, and therefore Plaintiff and the Class members performed their obligations under the contracts.

71.     Defendant, however, did not adequately perform its obligations under the contract with Plaintiff and the Class members, because the ReadyNAS devices failed to store and protect Plaintiff's and Class members' files. In fact, Defendant unilaterally deleted Plaintiff's and Class members' files from their ReadyNAS device(s) and Defendant's ReadyCLOUD.

72.     Defendant's breach of contract has proximately caused Plaintiff and the Class members economic injury and other damages because they purchased a product that does not perform as represented by Defendant and lacks the promised and paid-for utility.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**In the Alternative to *Breach of Contract* and**
***Breach of Express Warranties under Cal. Comm. Code § 2313***
**(On Behalf of Plaintiff and the Class)**

73.     Plaintiff incorporates the foregoing allegations as if fully set forth herein, excluding paragraphs 64-74.

CLASS ACTION COMPLAINT                    14

74.     Defendant has knowingly received and retained benefits from Plaintiff and Class members under circumstances that would render it unjust to allow Defendant to further retain such benefits.

75.     Defendant knowingly received and appreciated benefits at the expense, and to the detriment, of Plaintiff and Class members.

76.     Under principles of equity and good conscience, Defendant should not be permitted to retain the monies belonging to Plaintiff and Class members that they received as a result of their misconduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Michel Sassine, on behalf of himself and a Class of similarly situated individuals, respectfully requests that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Michel Sassine as class representative, and appointing his counsel as class counsel;

B.     Declaring that Defendant's actions as set out above constitute a violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), breach of express warranties pursuant to Cal. Comm. Code § 2313, breach of contract, and (in the alternative) unjust enrichment;

C.     Awarding damages, including actual and punitive damages where applicable, to Plaintiff and the Class;

D.     Awarding injunctive and other equitable relief as necessary to protect the interests of the Class;

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Awarding Plaintiff and the Class pre- and post-judgment interest;

G.     Providing such other injunctive and/or declaratory relief as necessary to protect the interest of Plaintiff and the Class; and

H.     Awarding such other and further relief as equity and justice may require.

1

**DEMAND FOR JURY TRIAL**

2      Plaintiff demands a trial by jury for all issues so triable.

3

4                                        Respectfully submitted,

5   Dated: March 23, 2018               **MICHEL SASSINE**, individually and on
                                         behalf of all other similarly situated,
6
                                         By: /s/ Rafey S. Balabanian
7                                             One of Plaintiff's Attorneys

8                                        Rafey S. Balabanian (SBN 315962)
                                         rbalabanian@edelson.com
9                                        Lily E. Hough (SBN 315277)
                                         lhough@edelson.com
10                                       EDELSON PC
                                         123 Townsend Street, Suite 100
11                                       San Francisco, California 94107
                                         Tel: 415.212.9300
12                                       Fax: 415.373.9435

13                                       *Counsel for Plaintiff and the Putative Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   CLASS ACTION COMPLAINT                          16